UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STOLT TANKERS B.V.<br><br>    Plaintiff<br><br>VS.<br><br>INTERCONTINENTAL TERMINALS COMPANY, LLC<br><br>    Defendant | §§§§§§§§§§     CIVIL ACTION NO:<br>(ADMIRALTY) |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Stolt Tankers B.V. ("Stolt" or "Plaintiff"), Plaintiff and files this Original Complaint against Intercontinental Terminals Company, LLC ("ITC" or "Defendant"), in a civil cause of action within the subject matter jurisdiction of this Honorable Court, and, based upon information and belief, would respectfully show as follows:

### I.

### THE PARTIES

1. Plaintiff, Stolt Tankers B.V. is a business entity duly organized in the Netherlands.

2. Defendant, Intercontinental Terminals Company, LLC, is a Delaware limited liability company authorized to conduct business in the State of Texas and, upon information and belief, its sole member is a New York citizen.

1

## II.

## JURISDICTION AND VENUE

3.    This is a cause of action within the admiralty and maritime jurisdiction of the United States and this Honorable Court under 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 2717(b) because Plaintiff alleges claims under The Oil Pollution Act of 1990 (OPA 90), 33 U.S.C. ch. 40 § 2701 *et seq*.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. To the extent that any of Plaintiff's claims do not arise within the subject matter jurisdiction of this Court, the Court nevertheless has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims because any non-federal claims are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy.

4.    The Court has personal jurisdiction over Defendant because Plaintiff's claim arises from and relates to Defendant's activities within the jurisdiction of the Court.

5.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and 33 U.S.C. § 2717(b) because the Defendant resides in this district and because it is the district in which a substantial part of the events or omissions giving rise to the claim occurred, and where the discharge, injury and damages occurred.

## III.

## FACTUAL SUMMARY

### Background

6.    ITC's Deer Park Facility is located on 265 acres situated along the Houston Ship Channel ("HSC").

7. The Deer Park Facility has 13.1 million barrels of capacity in 242 tanks. It stores petrochemical gases and liquids, as well as fuel oil, bunker oil, and distillates. The Deer Park Facility advertises capacity for up to five (5) ocean-going tankers and fifteen (15) barges simultaneously.

### March 17, 2019 – The ITC Fire

8. On the morning of March 17, 2019, an above-ground storage tank (No. 80-08) containing naphtha caught fire at the Deer Park Facility in an area known as the "Second 80's Tank Farm." This portion of the facility consisted of fifteen (15) 80,000-barrel capacity above-ground storage tanks.

9. At the time of the fire, ITC had not equipped the Deer Park Facility with a fixed gas detection system, which would have activated alarms to warn ITC personnel of a product release. As a result, ITC did not know about the naphtha release before the fire.

10. The fire spread, engulfing at least eight tanks and resulting in significant fumes and smoke, which, upon information and belief, contained toxic chemical, ash and fumes, which spread throughout the community including over and on the Plaintiff's facility at 15602 Jacintoport Blvd., Houston, TX 77015 and over its docks and marine terminal ("Plaintiff's Facility").

11. Additionally, ITC did not equip Tank 80-08's piping manifold with emergency or remotely operated isolation valves. As a result, ITC was unable to control the release of naphtha.[1]

12. Before the fire, ITC hired CIMA Services, LP ("CIMA Services") and Instrumentation & Electrical Specialist, L.L.C. ("IES") to revise the butane injection system and piping manifold of

---

[1] *See* U.S. Chemical Safety and Hazard Investigation Board – Factual Update – Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal (Published October 30, 2019) § 2.2, available at https://www.csb.gov/assets/1/20/itc_factual_update_2019-10-30.pdf?16522 (last accessed May 25, 2021).

Tank 80-08 for the specific purpose of reducing the time required to offload trucks. IES performed the instrumentation and electrical work. CIMA Services provided labor and equipment. Rather than replace the 2-inch piping with new 4-inch piping, CIMA Services installed used piping that was inadequate to serve as a butane injection line. CIMA Services was also responsible for obtaining all required work permits and conducting inspections and tests on the newly installed butane injection line. CIMA Services failed to adequately conduct these inspections and tests. Defendant failed to adequately supervise CIMA Services and inspect its work product prior to and after placing it into operation. Upon information and belief, as a result, the butane injection system failed and caused the release of naphtha.[2]

13. The affected tanks contained "Oil," as defined by the Oil Pollution Act, 33 U.S.C. § 2701(23), including: naphtha (No. 80-08), pyrolysis gasoline (Nos. 80-07; 80-14; 80-15), gasoline blendstock (Nos. 80-02; 80-03; 80-06), and base oil (No. 80-11).[3]

14. As a result of the initial inferno, eleven (11) of the fifteen (15) tanks collapsed or partially collapsed, causing the discharge of Oil products and presenting a substantial threat of discharge of Oil into the HSC and the navigable waters of the United States.

15. By the early morning hours of March 20, 2019, the initial fire at the Deer Park Facility was fully extinguished. Firefighting crews continued to spray foam and water on the tanks to prevent reignition.

### March 22, 2019 – Oil Spill and Closure of the Houston Ship Channel

16. On March 22, 2019, the fire reignited, causing a "catastrophic breach" of the Deer Park Facility's containment wall, which released "an estimated 470,000–523,000 barrels of a mixture

---

[2] *Id.*

[3] *See* ITC Tank Map, available at https://www.deerparktx.gov/DocumentCenter/View/7267/ITC-Tank-Map?bidID (last accessed May 25, 2021).

of fire water, firefighting aqueous film forming foams (AFFF), and remaining benzene, ethylbenzene, naphtha, xylene, toluene, pyrolysis gas (pygas), and other refined base oils from the storage tanks . . . into Tucker Bayou and adjacent waters, sediments, and habitats." The Oil and other chemicals "were carried out by stream flow and tides into the San Jacinto River, Houston Ship Channel, Carpenters Bayou, Old River, Santa Ana Bayou, and surrounding water bodies."[4]

17. ITC's Incident Commander Brent Weber described the Oil discharged into the navigable waters of the United States as "a mixture of the products that were in the tanks before the event occurred, which is primarily in that tank farm: gas blendstocks, naphtha, xylene, and pygas."[5]

18. In response to the containment wall failure, the U.S. Coast Guard closed a portion of the HSC to all vessel movements between Tuckers Bayou and Light 116. Later that evening, the USCG Sector Houston-Galveston office ordered the stoppage of all cargo operations in the Houston Ship Channel from Cargill Facility East Terminal to the Cemex USA Terminal, which is between Lights 139 and 129 of the HSC.

**March 23, 2019 – January 7, 2020 – Government Responses to ITC Fire and Oil Spill**

19. The EPA issued a report entitled "Field Report for Airborne Data Collected in Support of USA EPA Region 6 Intercontinental Terminals Company LLC Fire 23 March 2019." The report includes the below image with an explanation stating, "[c]aptured oil behind the boom is evident as is light sheen leakage moving into the channel."[6]

---

[4] *See* Notice of Intent to Perform a Natural Resource Damage Assessment (August 5, 2019), available at https://www.cerc.usgs.gov/orda_docs/DocHandler.ashx?task=get&ID=5609 (last accessed May 25, 2021).

[5] *See* Press Conference, ITC Deer Park Fire and Cleanup (March 23, 2019), available at: https://youtube.com/watch?v=Xnzm2OEthJk&feature=youtu.be&t=1467 (last accessed May 25, 2021).

[6] *See* Field Report for Airborne Data Collected in Support of US EPA Region 6 Intercontinental terminals Company LLC Fire (March 23, 2019), available at: https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%20Fire%2023%20March%202019%20final.pdf (last accessed May 25, 2021).



20. The EPA continued their ASPECT (Airborne Spectral Photometric Environmental Collection Technology) overflights to monitor the air quality and observe the oil sheen in the HSC.[7]

21. On March 25, 2019, "IR images collected over the confluence into the ship channel continued to show boomed oil products with some leakage occurring with sheen being driven to the southwest due to winds. No significant chemical detections were observed on this flight."[8]

---

[7] *See generally* EPA, ASPECT – EPA's Airborne Spectral Photometric Environmental Collection Technology (ASPECT), available at: https://www.epa.gov/emergency-response/aspect (last accessed May 25, 2021).

[8] *See* Field Report for Airborne Data Collected in Support of US EPA Region 6 Intercontinental Terminals Company LLC Fire (April 15, 2019), available at: https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%20Fire%2015%20April%202019%20final.pdf (last accessed May 25, 2021).

22.     On March 27, 2019, "the confluence into the ship channel continued to show sheen in the waterway." *Id.* By then, more than half a million gallons of oily water had been skimmed and removed from the HSC and related waterways.[9]

23.     On April 12, 2019, "sheen remain[ed] in the boomed areas" and "[a] small amount of sheen leakage was observed migrating into the main channel."[10]

24.     The Texas Commission on Environmental Quality ("TCEQ"), the Texas Parks and Wildlife Department, the Texas General Land Office, the National Oceanic and Atmospheric Administration, and the U.S. Department of the Interior (collectively, the "Trustees") are entitled to perform a natural resource damage assessment related to the incident. On August 5, 2019, the Trustees issued their intent to perform such a damage assessment "resulting from the release of hazardous substances, oil, and other chemicals at and from the ITC Facility into Tucker Bayou and the surrounding area."[11]

25.     The Trustees also issued their Preassessment Screen and Determination concluding: "In all, approximately 50 different chemicals regulated under CERCLA, the Clean Water Act (CWA), and OPA were released from the Facility. Thirty-six of the chemicals released are on

---

[9] *See* "Oil, sludge not contained near Deer Park chemical fire, Coast Guard says," (March 26, 2019), available at: https://www.click2houston.com/news/2019/03/26/oil-sludge-not-contained-near-deer-park-chemical-fire-coast-guard-says/ (last accessed May 25, 2021).

[10] *See* Field Report for Airborne Data Collected in Support of US EPA Region 6 Intercontinental Terminals Company LLC Fire (April 15, 2019), available at: https://response.epa.gov/sites/14150/files/ASPECT%20report%20ITC%20Fire%2015%20April%202019%20final.pdf (last accessed May 25, 2021).

[11] *See* Trustees' Notice of Intent to Perform a Natural Resource Damage Assessment (August 5, 2019), available at: https://www.cerc.usgs.gov/orda_docs/DocHandler.ashx?task=get&ID=5609 (last accessed May 25, 2021).

the EPA's substance Registry Service, 17 are on the Consolidated List of Lists under CERCLA, and 5 are listed on OPA [sic] list Of [sic] Petroleum and Non-petroleum Oils."[12]

26. The Trustees determined the following OPA products were released into the HSC and the navigable waters of the United States: naphtha, pyrolysis gas (pygas), and other refined oil and petrochemical products including petroleum, distillates (petroleum) hydrotreated heavy paraffinic, and distillates (petroleum) solvent-dewaxed heavy paraffinic.[13]

27. The Trustees also commented that they were "unaware of any other exclusion or defense to liability under CERCLA, the Oil Pollution Act (OPA), or other applicable laws."[14]

28. On January 7, 2020, TCEQ published an After Action Review ("AAR") addressing the incident[15] and confirming that the Deer Park Facility fire and resulting oil spill involved the discharge of at least the following OPA products into the HSC: naphtha, pyrolysis gas (pygas), gasoline blendstock, and base oil.[16]

29. After the discharge, the AAR reported that "[b]ooms were deployed, and the U.S. Coast Guard closed a portion of the HSC between Tucker Bayou and the San Jacinto Monument to Crystal Bay."[17]

---

[12] *See* Intercontinental Terminals Company LLC ("ITC) Deer Park Facility Tank Fire, Preassessment Screen and Determination (August 5, 2019), available at: https://www.cerc.usgs.gov/orda_docs/DocHandler.ashx?task=get&ID=5610 (last accessed May 25, 2021).

[13] *Id.*

[14] *Id*.

[15] *See* TCEQ After Action Review Report (January 7, 2020), available at: https://www.tceq.texas.gov/assets/public/response/smoke/air/final-ITCFire-AAR-01.07.2020.pdf (last accessed May 25, 2021).

[16] *Id.* at § 2.0.

[17] *Id.* at § 2.0.

30.    The AAR also describes how U.S. Coast Guard personnel were "directly involved in the oversight and management of on-water recovery and remediation efforts of contracted Oil Spill Response Organizations" ("OSRO").[18]

31.    OSRO is a classification established by the U.S. Coast Guard in response to the regulatory requirements of OPA. "OSRO is a voluntary program that was developed to assist oil handling facilities and vessels in preparing spill response plans."[19]

32.    According to the AAR, "the UC [Unified Command] and its contracted OSROs recovered 223,882 bbls [barrels] of oily-water petro-chemicals from waterways surrounding the ITC tank farm and HSC."[20] Efforts by the U.S. Coast Guard "led to the successful recovery of over 9.4 million gallons of oily-water petro-chemicals from the HSC and adjacent commercial waterways, as well as the decontamination of 224 vessels."[21]

33.    To that end, according to the AAR, "214 response vessels, 142 skimmers, 50 vacuum trucks, and the placement of nearly 168,000 feet of boom were utilized to mitigate the substantial threat to the environment and nationally significant economic waterway."[22]

## Plaintiff's Damages

34.    The closure of the Houston Ship Channel disrupted Plaintiff's operations and resulted in damages, including but not limited to cargo cancellations, lost freight revenue, and delay damages as a result of the closure, all caused by Defendant's negligence, the threat of oil spill, and the oil spill.

---

[18] *Id.* at § 3.3.2.

[19] *Id.*

[20] *Id.*

[21] *Id.* at § 3.4.2.

[22] *Id.*

35. Plaintiff lost $431,994.00 in freight due to cancelled shipments of butyl acrylate cargo onboard the STOLT LARIX and STOLT COMMITMENT.

36. Plaintiff also sustained $1,801,244.00 in lost revenue and damages due to delays and lost cargo opportunities for STOLT INNOVATION, STOLT PONDO, STOLT KASHI, STOLT CREATIVITY, STOLT STREAM, STOLT INNOVATION, and STOLT CAPABILITY.

37. Plaintiff suffered $3,917,687.00 in economic losses on other voyages in the Gulf of Mexico specifically related to the fire and closure of the ship channel.

38. These expenses, losses, and damages were proximately caused by the negligence of the Defendant, the threat of pollution, and actual pollution. On June 24, 2019, Plaintiff submitted an administrative claim to Defendant for damages arising from the incident addressed in this Complaint.

39. On July 29, 2021, Plaintiff submitted an amended administrative claim to Defendant for $6,150,925.00 in damages.

40. Defendant has not responded to or resolved Plaintiff's administrative claim.

## V.

## CAUSES OF ACTION

### COUNT 1: NEGLIGENCE AGAINST THE DEFENDANT

41. Plaintiff re-alleges and incorporates herein each and every allegation and averment contained in the preceding paragraphs.

42. The Defendant owed a legal duty to the Plaintiff to safely operate the Deer Park Facility.

43. Defendant had a duty to exercise ordinary care, meaning the degree of care that would be used by any oil and chemical storage terminal of ordinary prudence under the same or similar

circumstances, and Defendant breached that duty, including, but not limited to, one or more of the following:

    a.    Failure to develop, implement, and maintain proper operational procedures and protocol concerning safe oil and chemical storage;

    b.    Failure to develop, implement, and maintain proper safety procedures and protocol concerning safe oil and chemical storage;

    c.    Failure to properly maintain oil and chemical storage tanks and related equipment;

    d.    Failure to install proper equipment to prevent and contain an oil and/or chemical release;

    e.    Failure to adequately prepare for and implement effective procedures to prevent and contain an oil and/or chemical release and fire;

    f.    Failure to take reasonable action to prevent the oil and/or chemical release and fire or minimize the effects thereof;

    g.    Failure to properly train or manage its agents, servants, and employees to handle an oil and/or chemical release and fire;

    h.    Failure to exercise reasonable care under the circumstances; and,

    i.    Other acts of negligence that may be determined as discovery progresses.

44.    The Defendant breached its duty to the Plaintiff by failing to maintain safe operations, causing a fire and subsequent oil spill.

45.    As a direct and proximate result of the Defendant's negligence, the Plaintiff has suffered an injury and sustained damages for which the Defendant is liable.

## COUNT 2: THE OIL POLLUTION ACT (33 U.S.C. § 2701)

46. Plaintiff re-alleges and incorporates herein each and every allegation and averment contained in the preceding paragraphs.

47. The Oil Pollution Act ("OPA") imposes liability upon a "responsible party for a . . . vessel or a facility from which oil is discharged, or which poses a substantial threat of a discharge of oil into or upon navigable waters or adjoining shorelines" for the damages that result from the incident, as well as removal costs. 33 U.S.C. § 2702(a).

48. ITC is the "Responsible Party" as defined under 33 U.S.C. § 2701(32) for the Deer Park Facility fire and resulting oil spill into the HSC.

49. The Deer Park Facility fire and resulting oil spill into the HSC involved a discharge of Oil under the OPA.

50. OPA imposes liability upon a Responsible Party for an incident, meaning "any occurrence or series of occurrences having the same origin, involving one or more vessels, facilities, or any combination thereof, resulting in the discharge or substantial threat of discharge of oil." 33 U.S.C. § 2701(14).

51. ITC is strictly liable as the Responsible Party for all the damages resulting from the Deer Park Facility fire and resulting oil spill under OPA.

52. The fire, collapse of storage tanks containing Oil, and subsequent breach of the containment area constitute a series of occurrences that caused a discharge and the substantial threat of a discharge of Oil into the HSC.

53. ITC has no right to limit its liability under any provision of OPA because the incident was proximately caused by its gross negligence or willful misconduct, or the violation of an applicable

safety, construction or operating regulation by ITC, an agent or employee of ITC, or a person acting pursuant to a contractual relationship with ITC.

54. As a result of the Deer Park Facility fire and resulting oil spill, Plaintiff has a right to recover damages under OPA, which provides for the recovery of the loss of profits or impairment of earning capacity due to the incident.

55. Plaintiff has satisfied all conditions precedent to commencement of this action under OPA, including, without limitation, by timely presenting its claims to ITC as described above.

56. ITC did not settle Plaintiff's claims by payment within 90 days after the date upon which the claims were presented, and thereby the claims were rejected.

## V.

## DAMAGES

57. As a direct result of the Deer Park Facility fire and subsequent oil spill, Plaintiff sustained damages in excess of $6,150,925.00, including, but not limited to damages for lost cargos, lost revenue, economic loss, and other damages resulting from the Deer Park Facility fire recoverable pursuant to OPA, state law, the general maritime law, and any other applicable state and federal law as well as attorneys' fees. Plaintiff is entitled to recover these damages under its negligence and OPA causes of action.

## VI.

## CONDITIONS PRECEDENT

58. All conditions precedent to Plaintiff's claims for relief have been performed or have occurred. All and singular, the premises of this Original Complaint are true and correct and within the jurisdiction of the United States and this Honorable Court.

**WHEREFORE**, Plaintiff, Stolt Tankers B.V. prays that this Original Complaint be deemed good and sufficient, and after all due proceedings, there be judgment in its favor and against Intercontinental Terminals Company, LLC for all damages available under the law caused by ITC and all legal interest, costs, attorneys' fees, exemplary and punitive damages, and other equitable relief to which Stolt is entitled under the facts and/or applicable legal theories. Stolt further seeks relief under any available theory whether or not specifically indicated herein.

Respectfully submitted,

/s/ Raymond T. Waid
Raymond T. Waid
Attorney in Charge
La. State Bar No. 31351
SDTX Federal ID No. 102032
Emily von Qualen
Texas State Bar No. 24102615
SDTX Federal ID No. 3123350
Elizabeth B. McIntosh
La. State Bar No. 36575
SDTX Federal ID No. 3133917
701 Poydras Street, Suite 5000
New Orleans, Louisiana 70139-5099
Telephone: (504) 581-7979
rwaid@liskow.com
evonqualen@liskow.com
ebmcintosh@liskow.com


Michael A. Golemi
LISKOW & LEWIS
Texas State Bar No. 24047536
SDTX Federal ID No. 559843
1001 Fannin Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 651-2900
Facsimile: (713) 651-2908
E-mail: magolemi@liskow.com

***Attorney for Stolt Tankers B.V.***